I'd like to introduce myself. I represent Mr. Samaniego. We attempted to do a change of plea, in this case a change of plea transcript. It shows that the change of plea proceeding lasted less than nine minutes. And during that time there were two very short breaks of about 39 and 17 seconds. The plea called that we did not take much time. I'm prepared to answer whatever questions the court might have regarding why a mandamus is appropriate. What exactly are you looking for by way of relief? We're looking for the matter to be remanded to the District Court with an order that Mr. Samaniego be allowed to attempt to change his plea by way of a plea colloquy. In other words, that he be allowed to go forward with a plea colloquy on the plea agreement that we had entered into with the government. And if the District Court thinks it hears in the course of that a statement by defendant which is not consistent with the plea, is the District Court free to reject the plea? The District Court has gone through a plea colloquy and has asked sufficient questions so that the reasonable person could make a determination of whether or not, for example, Mr. Samaniego was competent or whether Mr. Samaniego was making a voluntary statement of guilt. Then the court would be free. I think the hard one here is whether the defendant is actually acknowledging guilt because the problem here as perceived by the District Court is the statements being made by defendant inconsistent with the plea. That is, the defendant was characterizing himself as a victim rather than as an offender. Well, in the course of a proceeding, the District Court detects the same attitude or position by defendant. I'm not sure what the District Court is supposed to do. I mean, this isn't an exercise where the court is supposed to cooperate to make sure the defendant properly reads his script and acknowledges guilt. If the defendant says, well, I characterized himself, I'm a victim, then his position is he's not guilty. And if the defendant had characterized himself in that way and if the court had made inquiry, where the failure occurs here is when the court simply hears something, supposes that that means that he is stating that he's a victim, and cuts off the proceeding. If the court in this situation had heard Mr. Samaniego say, I did such and such events, I worked at the house, I was cleaning the house, I was watching, I was taking care of cars, and then he says, I left. Watching was probably washing, but go ahead. That's your problem to transcript, but go ahead. Well, that is a problem, but actually I do believe Mr. Samaniego, because of my extensive conversations with him, has recommended watching and simply was in a rather staccato mode and was just blurting out all the things that he knew that he needed to get in front of the court in order to get through the plea colloquy. So while I read that, too, and I went, does that mean washing or watching? But that's where I think the failure occurred. The court at that point should have said, Mr. Samaniego, or something to the effect, Mr. Samaniego, are you saying that you were forced to work for these people, or are you saying that you were working there in order to work off the fee that was being charged? If he was in fact working in the house to work off the fee that was being charged, then he was in fact working in the house for some kind of remuneration, which then made him guilty of the crime of harboring aliens. Counsel, I would like to interrupt. I was disconnected for about four minutes. You may have answered this question, but if you'll forgive me, let me just pose it. It seems to me that you argue that Mr. Samaniego's description was sufficient to explain the nature of the crime, even though he didn't say harboring aliens. As I read the record, however, the problem was not the lack of detail. The problem was that Mr. Samaniego told the district court that he was forced to stay at the house to pay off a debt, and he tried to run away. To me, this is inconsistent with the intent required for the harboring offense. Would you address that, if you have not already? I'm sorry. And, Your Honor, I was just beginning to explain that. All right. Thank you. At the point that the court hears words that the court thinks mean that Mr. Samaniego is making an excuse for why he was there, the court could very easily, and should have, simply asked Mr. Samaniego, are you saying that you were working there in order to work off your fee, or are you saying that you were forced to work there? That question has never been posed to Mr. Samaniego, and the problem with this is... It has, in a sense, because he was the one that said, and once I ran away, but since I didn't have any shoes, I went all the way to the corner, and then I came back. He's suggesting he's being held there. He's not eager to pay the fee. If he could have gotten away, he would have. Well, or it's suggesting that he went to the corner and went, you know, I'm better off working for these fellows. No, he said why. He didn't have his shoes. Well, but the follow-up question is what you're posing. I should back off a minute and say I find what happened here disturbing, but at the same time, where are you getting a rule about how far the district court needs to go in terms of inquiry? Well, I think that several of the cases that I cited and the, I don't know if that's how you say it, the AYN case, the Yoon case, I think is most indicative of the process because in that case it says that the court should conduct a colloquy. And a colloquy is conversation. A colloquy is not a request for an opening statement by the defendant. The problem was here the court comes in and the court says I'm not going to deal with this and then asks him some questions and says I'm not going to do this because I'm going to take a ten-minute break and then doesn't take a ten-minute break and keeps going and then gets upset with the defendant and leaves. In this particular case, and many other cases support the same proposition, but it's supposed to be a colloquy. It should be a discussion between the court and the defendant in order for the court to make the investigation and for the defendant to make the explanation. Usually the court, our decisions and most courts of appeals that talk about that are making sure that the defendant properly understands what's going on. The colloquy is meant to flesh out something more than a simple statement, I plead guilty. And in this case it's really the other way around because we've got a statement by the defendant that does give some sense that it's inconsistent and you're trying to say, well, the court should talk it through. And on one level I understand that, but I'm not sure that that's a requirement if in fact the colloquy is intended to protect the defendant, not to elicit from him the words that he needs to say in order to plead guilty. Well, and I might normally agree with you, but in this particular situation where the court simply comes in and the court has already expressed that it's upset with the defendant because of what the court perceives as the defendant's faking his disability and comes in and says the defendant's going to have to establish that he's competent, the defendant is going to have to establish what the crime is, the defendant is going to have to establish what the factual basis is, that's not a colloquy. That's requiring an opening statement by the defendant at a plea. And that isn't what the court has asked for in many previous cases. The court has gone through and required discussion. And I agree that while in this particular case it kind of seems backward, but that's because the court started out, tell me what crime you're accused of. Well, I mean, that's halfway through this nine-minute session. Tell me what crime you're accused of. And my client, nervous as can be, starts to blurt out the entire situation that we have talked about, and he wants to get everything out on the record all at once, and boom, he's just simply cut off without any further inquiry, or simply say, wait a second, what I want to hear from you is what's the crime, and then what's the facts. It would be a nice, to me the only, the hard question here is whether on the facts as he reported them, he would have, he did or didn't establish the crime, or at least whether he said anything that was actually inconsistent with being guilty. What's your position about that? Our position is that he established the facts necessary to show that he was harboring, and that if the court had a question regarding his position as to whether he was forced or whether he was willingly working there, that's where the court should have made an inquiry. And he didn't actually say, he suggested that he was there working off the money and that he, quote, ran away, whatever that means, but he didn't really directly address the question of whether he was, it was really more of a duress defense than it was an intent issue, wasn't it? Yes. So it wasn't really about his mens rea, it was more about whether he had a duress, whether he was claiming a duress defense. Right, and actually in all of our previous discussions the issue of duress had never come up, and yet the defendant made lots of statements that the court has quoted, but duress was never an issue until right then, and that's where I think the court had the opportunity to simply make the record clear as to whether or not he was asserting a duress defense. So what rule would you suggest, first of all, what cases are there where a court of appeals has ever issued mandamus or otherwise disapproved of a judge's rejection of a guilty plea? Well, I think... Ellis and so on, but those were weird cases. But Vasquez's grant, and there not being a factual basis grant. Right, but Vasquez's also is fairly clearly on point on this particular situation. It wasn't about a factual basis problem, it was about the judge not being happy with what was alleged as the crime. In that case, Your Honor, I'm sorry, I don't have a case in mind. Okay, thank you very much. I'll reserve my last minute. Wait a minute. I don't see Judge Nelson. Do we? We just talked about how much better the system works now than it used to, and it's proving us wrong. Okay. I'll tell you. Okay, so we lost Judge Nelson. We lost Judge Nelson. We lost Judge Nelson. Okay. Okay. Okay. Okay. Okay. We'll take a brief recess until we get the system back together again. Thank you very much, and we're sorry. All rise. This court is now in recess for 10 minutes. See you, Mr. Nelson. You're last, sir. So do I. Okay. Awesome. Can you hear me? Yes. They just took a recess. So maybe about two more minutes. All right. Thank you. The court is now on. Please tell them I am now back. I'm sorry. Say again. Please tell them that I am now back on. I am now connected. I can't hear you. I'm sorry. I am now connected. I'll let you know you're now connected. Yes, we'll inform them. Thank you. Okay. Caleb, are you on that side? Yes. We just want to maybe let the system run for maybe about a minute. We're getting breakups or something in the audio. And you know what? This morning when I tried to call over there, I couldn't place a call to your side in Pasadena. I had to have, I think it was Kathy or Lucy. Who's the judge's assistant? Is it Kathy? Yeah, that's another indicator there's something wrong with the cellular system I pulled in. This one's new, so. This one is okay? The audio is a little bit muffled, though. I can't hear you so intelligibly. Okay. I'll crank the mic up. Okay. Let's try now. Maybe talk to me for a second. Okay, check one, two, three, four. That's much better. Much better. Okay, should be good now. We'll have the judges come back in. We apologize for the inconvenience, Judge. That's okay. All right. Thank you. All right. Thank you. Thank you. Thank you. She's wanting to see. All right. Thank you very much. Good morning. May it please the court, my name is Lisa Settle and I'm appearing for the United States, which is a real party in interest. And I'd be happy to answer any questions you may have at this time. It would be nice to know the position of the United States. That's my first question. Well, we didn't take, we didn't file, as you know, a response in this case. And the only position we took was that a stay should be issued, so we didn't have to do more than one trial. Stay issued? Yes, on the 9th Circuit. Never since. It's all been on ice because of this. Yes. It'll be six years in October. If it gets sent back, is the government still prepared to proceed? Suppose we send it, either way we send it back, what's the government's position with regard to a potential guilty plea? The defendant will be offered the same guilty plea or he may proceed to trial. The government is prepared to try the case. We have our witnesses and we can go forth. But in this case, the United States believes that the defendant did make a factual basis. But we agree with the district court that the court has wide discretion not to accept the defendant's stay. And that's why we didn't take a position in this case. Let's be a little more specific about that. If he made a factual basis, does the district judge still have the discretion? I do believe that the district court has wide discretion. And there's one thing, you know, there's a couple elements that the court did not explore. I'm trying to get the legal leg. Okay. Let's assume there was no doubt that he made the factual basis. Suppose he said, what did you do? I, you know, I stood guard over these people. It was of my own free will. And I kept them, I harbored them. I think if there was no doubt, which I don't think in this case is clear, but I think if there's no doubt, then the district court should have accepted the plea and would have been able to accept the plea agreement or reject the plea agreement. So there's no discretion to refuse to accept a plea where the factual basis is made out and other procedural mechanisms are met. Is that what you're saying? Or is there still discretion to refuse a plea? I think at some point you have to draw the line where it's extremely clear that the defendant made a factual basis. Again, in this case, I don't Assume the basis. I think I've got the same question, at least in my mind, distinguishing the district court does have some rights with regard to plea agreement and the proposed sentence. And this was in the context of an agreement, correct? Yes. We didn't get to that. We never got to that. No, we never did. That's the case we usually get. In this case, the plug got pulled before then because of the expressed doubts of the district court with regard to whether the plea had a sufficient factual basis so that the scenario would still be possible to go back to the district court. If the district court was satisfied with regard to factual basis, basically the assumption we put to you is assume there's a factual basis. If there is a factual basis, if there's not a legitimate ground to challenge voluntariness and so forth, then at that point, is it the government's position the defendant's got the right to plead guilty, the district court may have discretion with regard to the terms of the agreement, notably the sentence that is proposed, and the district court could announce its intent not to be bound by it and let the defendant decide at that point where to go. But I take it it's your position, unless those questions are legitimate with regard to voluntariness and factual basis, the defendant does have the right to plead guilty and the district court does not have discretion. Is that correct? Yes, Your Honor. Then, having established so much, you said you thought that there was a factual basis based on what he said. Yes. It has to do with what the intent is and what you would have to prove. What would you have to prove and is this consistent with it or not? Yes, he'd have to say that he knew or was in reckless disregard of the fact that these people were aliens and had illegally entered the United States. He doesn't really go into much detail about that, but he's basically implying that he was an illegal alien, which would go to his knowledge of the other illegal aliens in the house, and that's not really covered during page six of the transcript where he only speaks for a couple of paragraphs. So that's not covered in a factual basis, but he does cover the fact that he was working at the house to pay off his fee, and the district court did talk about how there had to be mens rea and that it was done for commercial advantage or financial gain, and I believe what he's saying, and this is something that's very common in Arizona, is that he was working off his fee, which is he's making money because he's not having to pay the fee. He's working off his fee. But he did give some indication that he was, in terms of our earlier conversation, not free to leave. Right. How would the government's position be if that were the case in terms of whether the crime had been made? He had a duress defense, which I don't believe. I agree when the court was speaking earlier about duress, and this has come up in other cases of mine. He didn't have a duress defense because he could leave the house. He said he left the house. So, I mean, he wasn't forced to work there. I ran away. And then they said earlier I could be released, both of which suggested he was being held there against his will, even though he managed to get away. He could be released from the terms of his contract, which is brought into the United States, you pay a smuggling fee before you move on within the United States. In this case, he said he didn't have any money because his uncle had left, so he agreed to work off his fee. This was, you know, unusual in that you write it out, the factual basis, you know, in the plea agreement, and here he's just kind of speaking a factual basis. I believe that he makes it. I do think there's some points that need to be clarified. Is the plea going in the record? No, it's not, because it never got. We don't know what the factual basis is in the plea agreement. No, it has never gone over in any way. Okay. So then what would the government's position be with regard to whether there is any obligation by the court before refusing the plea to go to answer some of these questions that we've been asking now? What do you mean by released? What do you mean by ran away? Are you claiming duress? Were you kept there against your will? You would agree that he was kept there against his will, that he couldn't be guilty or not? Well, I agree that would be a defense. Yes, that would be a defense if there was duress. I don't think there was duress in this case. I think he agreed to work off his fee, agreed to come here, had to pay a smuggling fee, couldn't pay it, was going to work off his fee. I don't think you can force the district court to ask the follow-up questions. That was going to be my question. What case says the district court has to ask the follow-up questions if the district court is convinced that he truly was not harboring? No, there isn't any that I'm aware of. I think the district court, again, has wide discretion in rejecting a factual basis. She's in the courtroom. She's had a long experience with this defendant, and she felt that he didn't make the factual basis from where she was sitting that day. Then why shouldn't we accept that? I'm not saying that you shouldn't accept it. Even though I think there was a factual basis, I think that she had discretion not to accept the plea. Your ultimate position is that we should not grant the writ. I'm sorry? Your ultimate position is that we should not grant the writ. I think, yes, Your Honor, I think that she had the discretion not to accept the plea. I think it's a reason, again, I did not file a response, was that it's a very close call. I think there was a factual basis, but yet I think that she had. If the writ is sent, if we sent the case back, I mean if we refused the writ, that you would nonetheless both go back to the district court and say, why don't we try this again in terms of the plea colloquy? Would we do that? We would probably do, I mean, I anticipate that I would be open to doing that. That would really be the district court's call of whether she wanted to hear it again. But certainly the United States will either go to trial or the defendant will be able to enter a guilty plea. If the petitioner suggested having one more hearing on this before a trial, you wouldn't oppose it? Oh, no, not at all. Not at all, Your Honor. Thank you very much. The court asked if you have discretion, if you made a factual basis. The problem is here, is that really begs the question here, because that isn't the question that the trial court was interested in, and why she rejected this. She rejected the plea because she said he hadn't made the mens rea. She said it sounds to me like you are a victim, you are not a defendant, which could easily mean a duress defense. But in her answer to the brief, she concentrates extensively and exclusively on the intent issue, on the mens rea issue. She wasn't concentrating on a duress defense. She didn't say you've now put forth a defense, the defendant put forth a defense, and that's why I rejected it. She said the reason she rejected it was because the defendant hadn't established the required mens rea. And in this particular situation, the defendant had established the mens rea. He was working for a fee. He was working to gain something for himself. But again, that goes back to the question that I raised of how this situation could have most easily been remedied, and that would simply have been by the trial court making an inquiry, and that's what the Awu case said, and I keep pronouncing this strangely, but it's A-H-N, and in that case, this court said, the circuit court of Washington, D.C. said, before accepting a plea, the trial court must engage in a colloquy. Engage in a colloquy is more than simply saying, tell me what you did, and then letting the defendant ramble on and then finding an excuse to reject a plea. There is a bit more of an obligation on the court than to simply say, oh, I've heard something I don't like, and not investigate it any further. Anything else, counsel? Nothing else, Your Honor. Thank you very much. Thank you both, counsel.
judges: Dw Nelson, Berzon, Clifton, Cjj